# Nowell *appellant, &c. vs.* Nowell.

The power vested in this Court to grant license to sell real estate for the payment
of debts is discretionary, not imperative.

License to sell real estate for the payment of debts will not be granted where the
claims appear to be barred by the statute of limitations.

Nor will license be granted to sell real estate to defray charges of administration,
under *Stat.* 1821, *ch.* 51, *sec.* 68, after the lapse of four years from the grant of
letters of administration, and a reasonable time thereafter to settle the adminis-
tration account.

Whether license to sell to defray charges of administration only, can be granted
where the testator died before the separation of *Maine* from *Massachusetts,* and
the rights of heirs and creditors were vested under the laws of the latter State ;
—*quære.*

License under the foregoing circumstances having been granted by the Judge of
Probate, from whose decree the heirs did not appeal, having had no knowledge
of the pendency of the petition, nor of the passage of the decree, an appeal was
granted on his application to this Court, under *Stat.* 1821, *ch.* 51, *sec.* 65, and the
decree reversed, notwithstanding the land had in the mean time been sold under
the license.

The material facts in this case, except that the land was *sold*
*Dec.* 24, 1829, under the license granted by the Judge of Probate,
will be found in the opinion of the Court.

Nowell *v.* Nowell.

*J. Shepley,* for the appellants, cited *Ex parte Allen,* 15 *Mass.* 58 ; *Thompson v. Brown,* 16 *Mass.* 180 ; *Ex parte Richmond,* 2 *Pick.* 567 ; *Heath v. Wells,* 5 *Pick.* 140.

*Appleton,* for the appellee.

PARRIS J. delivered the opinion of the Court in *April* term 1833, the cause having stood over for advisement.

This case comes before us as the Supreme Court of Probate on appeal from a decree of the Judge of Probate for this county granting license to the petitioner, the present appellee, as administrator *de bonis non* on the estate of *John Nowell* deceased, to sell the real estate of said deceased for the payment of the charges of administration. The appeal was granted by this court upon the application of the appellant preferred under the 65th *sec.* of the " Act to regulate the jurisdiction and proceedings of the Courts of Probate ;" it appearing that the appellant was not present when the decree was passed, and had no notice in fact of the pendency of the petitioner's application for license, and that she had not lost her appeal by her own neglect. The decree appealed from was rendered without any opposition by those adversely interested, and probably passed rather as a matter of course, it appearing that a balance was due the administrator, and that there remained no personal estate of the intestate with which to pay it. The material facts in the case are these : *John Nowell,* the intestate, deceased in 1810, or previous to that time. On the 16th of *July,* 1810, administration on his estate was committed to *James Nowell.* On the 13th of *June,* 1820, *John Nowell,* the petitioner, was appointed administrator *de bonis non.* On the 14th of *June,* 1825, he settled his first account of administration, the character of which will be considered hereafter. On the 5th of *September,* 1825, the real estate, by decree of the Judge of Probate, was divided among the heirs. In *September,* 1829, the petitioner settled his second account of administration ; and in *November,* 1829, on his application, the decree appealed from was rendered, granting him license to sell so much of the real estate of the intestate as would be sufficient to satisfy the administration account.

Nowell v. Nowell.

By the 68th section of the act above referred to, (Statutes of Maine, *ch.* 51,) Judges of Probate of the respective counties " have the same authority which the courts of common law have, upon petition, to empower and license executors, administrators, &c. to sell the real estate of their testators, intestates, &c. respectively for the payment of just debts and legacies, with incidental charges, and charges of administration." We may, therefore, in examining this case consider it as if the application for license to sell was now originally before us, as a court of common law.

The power of the common law courts to authorize a sale of the real estate of a deceased person for the payment of his debts is contained in the second section of the " act respecting executors, administrators and guardians, and the conveyance of real estate in certain cases," (Maine Laws, *ch.* 52,) which provides that when the ·goods and chattels belonging to the estate of any person deceased shall not be sufficient to answer his just debts and legacies, upon representation thereof, and the same being made to appear to the Supreme Judicial Court in any county in this State, &c. the said court is authorized to empower and license the executor or administrator of such estate to sell all or such part of the houses, lands or tenements of the deceased as may be necessary to satisfy his just debts and legacies, with incidental charges, and charges of administration.

Is the real estate of *John Nowell* deceased, liable, or ought it to be now holden for the payment of the administrator's account ? It is to be kept in view that the intestate deceased in 1810, or before that time, and his estate was then to be administered under the laws of Massachusetts.

Upon all his real estate his creditors had a lien for the payment of their debts, provided his personal estate was insufficient for that purpose. Subject only to this lien the estate passed to his heirs, and the administrator had no power or control over it. The expenses of administration were a charge upon the personal estate, and out of that only could the administrator be remunerated. They formed no lien upon the real estate. That passed to the heirs free from any claim that might arise for charges of administration.

Nowell *v.* Nowell.

If the personal estate was insufficient to pay the debts, after deducting the expenses of administration, so much of the real estate might be sold as would discharge the deficiency ; but when the debts were paid, the lien upon the land, created by statute, was discharged, and the administrator had no power to receive it, by incurring further expenses in the administration. The language of the statute of Massachusetts providing for the sale of real estate by executors and administrators authorises license to sell " so far as shall be necessary to satisfy the just debts which the deceased owed at the time of his death with incidental charges," but not including charges of administration, as is the case in the statute of Maine above cited.

If the just debts of the intestate were paid by *James Nowell,* the first administrator, then clearly by the law of Massachusetts under which he administered, the real estate was discharged from all lien which the creditors or the administrator ever had upon it, and the lien could not be revived on the appointment of the administrator *de bonis non.* The real estate was, therefore, under the laws of Massachusetts, never assets in his hands, and he could have no authority to dispose of it. Whether the just debts were or were not paid by the first administrator does not distinctly appear in the case. He was appointed in 1810, and ten years intervened before the appointment of the administrator *de bonis non,* a time amply sufficient and far exceeding that contemplated by law for the entire settlement of the most complicated estate.

We find in the case a report of commissioners " appointed to receive and examine and audit the accounts of creditors to the estate of *John Nowell* deceased under the administration of *John Nowell* administrator *de bonis non,*" dated *February* 18, 1822, and accepted at a Probate Court on the 18th of *March* following, in which the commissioners report as due to *Abigail Emerson* $333 84-100 for balance due on note dated *February* 25, 1806. To *Ebenezer Simpson* $126 31-100 for balance due on note dated *March* 8, 1805, and to *Mark McIntire* $33 13-100 for balance due on note dated *January* 9, 1809. From this report it might be inferred that there were debts remaining unpaid by the first administrator. But

if it were so, and they were payable at the time of the decease of the intestate, the statute of limitations in favor of executors and administrators was a complete protection to the administrator *de bonis non*, inasmuch as nearly twelve years had then elapsed since the appointment of the first administrator. Or if the debts were not payable when the intestate deceased, the administrator *de bonis non* could shield himself under the same statute, more than seven years having intervened between the report of the commissioners and the application for license to sell, he being administrator during all the time. But the application is not to sell to pay these debts. We hear no more of them, nor of a debt of $2808 reported by the same commissioners as due from the estate of the intestate on the accounts of *James Nowell*, the first administrator. The commissioners report them due in *February*, 1822. Their report is accepted in *March*, 1822, and from that time to this we hear no more of these claims, although *John Nowell* is all the while administrator, and in the mean time exhibits and settles two accounts at the Probate office. These claims, if ever due, are barred, and no court ought to grant license to sell real estate to pay them, even if the estate remained undivided and in the same situation in which the intestate left it.

In the accounts settled by the administrator *de bonis non*, and for the payment of which he now asks license to sell real estate, the estate is charged $371 commencing with his first appointment in *June*, 1820, and ending *September*, 1829. The whole account is charging the estate but giving no credit. In *August*, 1820, there is a charge of $9 paid appraisers, and three dollars for attending with appraisers, and five dollars for attending Probate court to hand in inventory ; but no credit has ever been given for, or any account rendered of the disposition of what was appraised and inventoried. So as to the commissioners. There are charges amounting to $26 for the administrator's attendance with them, and also a charge for their services, but it does not appear by the administrator's account that he has ever paid a dollar of the sums reported by them to be due from the estate. The whole account is for his personal services in attending Probate courts, before commissioners and appraisers, for

monies paid for probate fees, attornies', officers', commissioners' and appraisers' fees, and for prosecuting and defending law suits. Not a dollar collected or credited, not an article of property accounted for, not a debt paid. This is such an account as most clearly would not be chargeable upon the real estate, under the statute of Massachusetts before referred to; and that statute was in force as law in Maine for nearly a year after the petitioner was appointed administrator. Whether the statute of Maine, which makes real estate liable for the charges of administration as well as the payment of debts, is applicable to a case where the administration was granted under the laws of Massachusetts, like the case before us, we do not feel called upon to decide.

The power of this court to grant or refuse a license to sell is discretionary, not imperative. The words of the statute imply such discretion. This court is authorised to grant license, not required, and the Probate court is invested with the same discretionary power. It is a power which is to be exercised cautiously and upon thorough examination, inasmuch as by its exercise the real estate, which otherwise would descend to the heirs, is placed at the disposal of the Administrator. The law of Maine ch. 52, sec. 1, has made all the real estate of which any person may die seized liable for the payment of his debts and charges of administration. But to the duration of this liability there certainly should be some limitation. It is unnecessary for the accomplishment of the object of the law, and it would be extremely inconvenient and embarrassing to heirs, that this lien, so extensive and paramount in its effect, should remain unlimited;—that after all the debts were paid, the administrator might still delay closing his administration until the real estate had been divided, and perhaps transferred, and then enforce his lien to the injury of innocent and unsuspecting purchasers. It is to prevent such mischief that the discretionary power of the court, is to be invoked to refuse license to sell; and if inconvenience and loss follow such refusal, they will fall where they ought, upon him who has been slothful, and not upon the heir or the unsuspecting assignee.

The law has fixed a period, by the expiration of which it seems to be contemplated that estates should be settled and heirs left in the quiet possession of their inheritance, undisturbed by either creditor or administrator. By statute no executor or administrator can be holden to answer to any suit that shall be commenced against him, in that capacity, unless the same shall be commenced within the term of four years from the time of his accepting that trust. This statute was intended for the benefit of heirs, that they might be quieted by a speedy settlement of estates in which they are interested, and the courts of Massachusetts whose statutes upon this subject are very similar to ours, have uniformly refused to grant license to sell real estate to pay debts after the expiration of the four years, unless extraordinary circumstances rendered it proper. As this is the period beyond which the administrator is no longer liable for the payment of debts, it is to be expected that his administration will speedily thereafter be brought to a close, unless some extraordinary circumstances render it necessary to keep it open a further time. If on seasonably closing his administration, either at the expiration of the four years, or within a reasonable time thereafter, it should be found that the personal assets remaining in his hands were insufficient to satisfy his administration account, the real estate, under our statute, might, at the discretion of the court, be holden for the deficiency.

We will now apply these principles to the facts in the case. The estate of the intestate, having been under previous administration for ten years, was, in *June* 1820, committed to the petitioner, as administrator *de bonis non*. After having been under his administration upwards of five years, a decree was passed in the probate court on the 5th of *September* 1825, dividing the real estate among the heirs. Of the proceedings preparatory to this division the petitioner had notice, as he has charged in his account in *June* 1825, five dollars for attending probate court about the division of the real estate;—and by another charge it appears that he was present at the probate court when the decree was made. And yet he raises no objection to the division, nor did he interpose any claim to

Nowell *v.* Nowell.

the real estate as liable for the payment of the charges of administration, although his first account had some months before been allowed by the probate court.

Thus, after the estate had been more than fifteen years under administration the heirs come into possession of their inheritance in severalty, as well they might. The administrator still lies by more than four years longer, permitting the heirs to remain in undisturbed possession, without any intimation of his claim, or any attempt to enforce his supposed lien upon the real estate, until *November* 1829, when he prefers to the probate court the application for license to sell, which is now the subject of consideration. At that time more than nineteen years had elapsed since the first administration was granted to *James Nowell,* and more than nine years since administration *de bonis non* was granted to the petitioner.

The real estate had long been discharged from all liability for the payment of the debts of the intestate. It was not by law liable for the charges of administration under the first administrator, nor for more than a year after the appointment of the petitioner ; and if it became liable under the revised statute of Maine, which, situated as this estate was, is by no means clear, we think the course pursued by the petitioner has been such as to give him now no claim upon the real estate for the payment of his account; or, at least, to render it improper for the court, at this remote period, to exercise its discretionary power in his favor to the manifest injury of the heirs.

*The decree of the probate court is, therefore, reversed.*